McBRIDE, Judge.
Plaintiff is appealing from the judgment of the court below, rendered after a jury trial, dismissing his suit against Mr. and Mrs. T. D. Allen, in which he claims $940.-00 as the amount due him as commission for negotiating the sale of certain real property to them, plus his attorney’s fee.
Mr. Allen, one of the defendants, is an experienced construction man, and for twenty years or more has been engaged as a building maintenance expert by two large corporations, being at the present time in charge of all buildings in the New Orleans area for one of them. He and his wife were interested in purchasing a home, and they made an inspection of the premises 6758 Canal Boulevard, New Orleans, which had been recently constructed, was entirely new, and had never been occupied, and which had been “listed” for sale by Curtis F. Scott, Jr., its owner, with plaintiff, who is a licensed real estate broker.
Apparently the Allens were favorably impressed with the building, and Mrs. T. Hauge, plaintiff’s saleslady, who was at the premises and who had in her possession a printed form of purchase offer already drawn up, except as to the price which the purchasers would be willing to pay for the building, urged Mr. and Mrs. Allen to fill in the blanks and sign the offer. They did sign the offer, which was for $21,000.00, conditioned upon their ability to borrow upon the property the sum of $15,500.00 secured by a mortgage loan thereon.
On the same day the purchase offer was signed by defendants, Mrs. Hauge turned the offer over to her principal, Hardie, after having first obtained the acceptance of the offer by the owner of the property.
On the same or the following day, Har-die demanded that Mr. and Mrs. Allen deposit with him, in cash, ten per cent of the purchase price of the property, which deposit they were obligated to make upon the owner’s acceptance of their offer. They refused to make the deposit, and when Mrs. Allen asked Hardie “about the plans and specifications,” he retorted that it was not necessary that they see the plans and specifications, as the owner had accepted their offer.
Plaintiff claims that under specific provisions of the agreement, either party who fails to comply with the terms of the offer, *76 if accepted, is obligated to pay his commission, with attorney’s fees, and that whereas the Allens failed and refused to make the deposit of ten per cent of the purchase price, as they obligated themselves to do, his commission is earned and they are liable for it.
Mr. and Mrs. Allen advance several defenses, but we need ¡only concern ourselves with one of them. Defendants contend that before their offer was to be effective or submitted to the owner, the plans and specifications of the 'building were to have been presented to and approved by them. They both testified that Mrs. Hauge, the saleslady, urged them to sign the offer at once, in order to save time, and that they did so, but only after her promise, and with the specific understanding, that the offer would not be submitted to the owner of the property until after the plans and specifications of the building had been submitted to them for their inspection, and they had expressed their approval thereof. They claim that Mrs. Hauge failed to keep her agreement, never did produce any plans and specifications, and that she fraudulently presented the offer to the owner for his acceptance, all in flagrant violation of her agreement to withhold the offer until the plans and specifications had been submitted to and approved by them.
Mr. Allen explained that he relied upon the integrity of Mrs. Hauge, and did not insist upon a stipulation being inserted in the offer relative to the production of the plans and specifications, because he “took her at her word.”
On the other hand, Mrs. Hauge denies that the offer was conditional or was predicated upon Allen’s approval of the plans and specifications, but she does admit, however, that there was some discussion relative to plans and specifications, and that she requested the owner to provide the Allens with a set of them. ,
The question of veracity, as between Mrs. Hauge and the defendants, was submitted to the jury, which found for the defendants, and undoubtedly the jury based its verdict upon the defendants’ testimony that Mrs. Hauge had taken undue advantage of them by prematurely submitting their offer to the owner, before producing the plans and specifications, and we fail to detect manifest error in this finding of fact.
A careful study of the record convinces us that the testimony of Mr. and Mrs. Allen is entitled to more weight than the negative testimony of Mrs. Hauge. It must be remembered that the latter admitted there was some discussion regarding the plans and specifications, and that it was Allen’s desire to examine them. The property in question was of new construction, and it is not difficult to visualize that Allen, who is a building expert, would naturally be vitally interested in examining the plans and specifications, and we believe that greater credence must be accorded to his testimony that the offer was predicated upon an approval by him of the plans and specifications. Hardie, the plaintiff, who, incidentally, was not present when the Al-lens signed the offer to purchase, challenged their version as to what transpired. This bit of his cross examination is interesting :
“Q. If you want to know what is behind the walls of a finished house, and what the foundations are of a finished house, isn’t is necessary to have the plans and specifications ?
“A. No sir.
“Q. How would you find out without the plans and specifications?
“A. I would tear the wall out.”
It is well settled that it is the peculiar province of a jury to pass on the credibility of witnesses, and a verdict will not be disturbed on questions of fact involving the credibility of witnesses, unless manifestly erroneous. Moret v. New Orleans Rys. Co., 112 La. 863, 36 So. 759; Continental Bank & Trust Co. v. Sacks, 152 La. 97, 92 So. 747; Selser v. Revol, 152 La. 447, 93 So. 675; Block v. Liquidators Henry Block Co., 13 Orleans App. 78; Graham v. Gordon, La.App., 148 So. 105.
The law requires exceptionally strong proof to sustain a charge of fraud. Metcalf v. Nonsour, 195 La. 570, 197 So. 235. But upon questions of fraud in fact, an appellate 'Court will be reluctant to interfere with the verdict of the jury, and *77 it seems that more deference will be paid to verdicts on questions of fraud than to verdicts on other questions of fact. Allain v. Cornaux, 3 Mart., N.S., 365; Slidell v. Rightor, 3 La.Ann. 199; Brown v. Sadler, 21 La.Ann. 182.
The instant case is similar in some respects to Viso v. Gullo, 179 La. 8, 153 So. 3, 5. There, plaintiff executed a deed which, it was verbally agreed, would not be delivered to the vendee, pending a final decision by the plaintiff of the propriety of the contemplated transaction. A few days later, the plaintiff decided not to permit the completion of the transaction, and all parties agreed that the deed should not be delivered for registry, but that it should be destroyed. Notwithstanding the latter agreement, the deed found its way into the hands of the vendee, and it was recorded. The Supreme Court said: “It is needless to say that if, as alleged, the deed was recorded without Viso’s knowledge or consent by any of the remaining parties interested, after the alleged agreement to destroy it, to which it is said they were parties, the registry of the deed was then in fraud of Viso’s rights.”
Plaintiff’s counsel argues that the judgment is without effect and should be reversed, because the verdict of the jury is ambiguous, not responsive to the charge by the court, and is so vague and indefinite as to be meaningless, and that the judgment is not consistent with the verdict ren-1-dered.
We find that the judge’s charge to the jury comprehensively covered all matters pertaining to the issues in the case. According to the transcript, he finally charged the jury:
“Gentlemen of the Jury, you may find either one of two verdicts:
“We the Jury find: A verdict in favor of the plaintiff, Charles F. Hardie, and against the defendants, Mr. and Mrs. T. D. Allen, in the sum of Nine Hundred Forty ($940.) and 00/100 Dollars, plus attorneys fees in the sum of-.
OR
“We the Jury Find: A verdict in favor of the defendant, dismissing plaintiff’s suit at plaintiff’s cost.” (Italics ours.)
■ The jury returned the following verdict:
“We the Jury Find: A verdict in favor of the defendant, dismissing plaintiff’s suit at plaintiff’s -cost.” (Italics ours.)
After plaintiff’s application for a new trial had been refused, the judge rendered his judgment in favor of both defendants. In refusing to grant the motion for a new trial, the judge said: “The verdict of the Jury, in this court’s opinion, is not vague and indefinite, for the reason that the verdict dismisses the plaintiff’s suit. The record will show that the charges drawn in this case contained two forms of verdict: one for the plaintiff and one for the defendant. In the verdict for the plaintiff, the charge shows the' plural of the word ‘defendant,’ that is ‘Defendants.’ In the verdict for the defendant, through inadvertence and clerical error, the ‘s’ was left off the word ‘defendant.’ ”
It is our concern to seek the true intent -of the jury. We are heartily in accord with the expressions of the trial judge, above set forth. We fail to comprehend ■how it can be said that ambiguity exists in the verdict., It was the unmistakable intention of the jury to dismiss plaintiff’s suit, and the verdict specifically contains the words, “dismissing plaintiff’s suit at plaintiff’s cost,” and the mere failure to place the letter “s” at the end of the word “defendant” wa.s harmless error,, and cannot militate against the force- of the verdict.
It Is well settled in many jurisdictions that under rules of construction, the singular or plural indicates the other, unless the contrary plainly appears from the context, and a Verdict finding in favor of “the defendant” will be construed as a finding- in favor of all of the defendants, where the suit is against two or more parties. Adams v. Wilkes, 118 S.C. 93, 109 S.E. 804; Monk-Sloan Supply Co. v. Quitman Oil Co., 10 Ga.App. 390, 73 S.E. 522; Bacon v. Schepflin, 185 Ill. 122, 56 N.E. 1123; Porter v. Cotney, 3 Ala. 314.
In 53 Am.Jur., Trial, sec. 1051, P. 727, is to be found the following observation:
“If the intention of the jury is clearly manifested in the verdict which they return *78 and that verdict is responsive to the issues, it will not be vitiated by reason of bad spelling or because it is clothed in bad English. * * *
“The same principle is applicable to inaccuracies in punctuation, there being no reason why an inaccuracy in punctuation should destroy a verdict responsive to the issues any more than an inaccuracy in grammar or spelling, so long as the meaning of the verdict is perfectly clear in the light of the surrounding facts and circumstances.”
In American Fisheries Co. v. Sanborn, 122 Me. 561, 119 A. 803, 804, the court said: “ * * * That it was an oversight and a clerical error on the part of the clerk is clear. For this reason we think it may now be corrected in accordance with what we have not the slightest question were the facts; that all the parties understood that the cases against both defendants were being heard, * *
It has been said in many jurisdictions that the trial court has the power to mold or amend a verdict so as to make it conform with the intention of the jury, and the best principle seems to be that an amendment should or should not be permitted to be made as it would best tend to the furtherance of justice. Osborne & Co. v. Deyoe, 21 Or. 367, 28 P. 70; Zarko v. Kramer, 117 Pa.Super. 443, 177 A. 478; Shively v. McDonnell, 308 Pa. 298, 162 A. 287.
See also, Reppert v. White Star Lines, 323 Pa. 346, 186 A. 788, 106 A.L.R. 413; Berko v. Public Service Co-ordinated Transport, 114 N.J.L. 39, 175 A. 364; Freid v. McGrath, 77 U.S. App. D.C. 385, 135 F. 2d 833; Colky v. Metropolitan Life Ins. Co, 320 Ill.App. 120, 49 N.E.2d 830; Rillo v. Eastern Carrier Corp, 132 N.J.L. 414, 40 A.2d 570; Maize v. Atlantic Ref. Co, 352 Pa. 51, 41 A.2d 850, 160 A.L.R. 449; Western Springs Park District v. Lawrence, 343 Ill. 302, 175 N.E. 579; Brown v. Superior Court, 51 R.I. 469, 155 A. 658; Keyes v. Chicago B. & Q. R. Co, 326 Mo. 236, 31 S.W.2d 50; Franchino v. Overseer, etc, 104 N.J.L. 435, 140 A. 919; Zebnik v. Rozmus, 81 N.H. 45, 48, 124 A. 460.
The fraud of his servant, perpetrated upon Mr. and Mrs. Allen in connection with their offer to purchase the property, strips the offer of any force and effect, and stands as a bar to plaintiff’s recovery of his commission from them. Fraud vitiates all things, in whatever guise it may assume. Cuselich v. Cuselich, 159 La. 652, 106 So. 20.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.